UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER MCCORKER, | |
| Plaintiff, | |
| v. | CAUSE NO.: 3:24-CV-775-TLS-AZ |
| RON NEAL, | |
| Defendant. | |

**OPINION AND ORDER**

Christopher McCorker, a prisoner without a lawyer, filed a complaint for damages against Warden Ron Neal. ECF No. 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

McCorker alleges that, on October 7, 2022, he was placed in administrative segregation pending an investigation. He was found guilty of a disciplinary offense and sanctioned with 90 days of segregation. He satisfied his sanction on January 7, 2023. According to the IDOC's policy, he should have been released to general population, but the warden determined that he would remain in administrative restrictive housing. While in restrictive housing, he could not attend religious services, see the barber, buy goods from commissary, or go to the law library. He was released from restrictive housing on May 29, 2023. ECF No. 2-1 at 12.

The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. That said, due process is only required when punishment extends the duration of confinement or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit has "concluded that inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005) ("[R]eassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest.")); *see also DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property in their classifications and prison assignments."); *Healy v. Wisconsin*, 65 F. App'x 567, 568 (7th Cir. 2003) ("[I]nmates do not have a protected liberty interest in a particular security classification.") (citing *Sandin*, 515 U.S. at 486).

Although later cases have questioned the conclusion that placement in nonpunitive segregation can "*never* implicate a liberty interest," *see Williams v. Brown*, 849 F. App'x 154, 157 n.3 (7th Cir. 2021) (emphasis added), timing plays a part in the analysis, even when conditions are significantly harsher. *See, e.g.*, *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017) ("Prisoners do not have a constitutional right to remain in the general population, but both the duration *and* the conditions of the segregation must be considered in determining whether due process is implicated." (cleaned up)); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697–98, 697 nn.2,3 (7th Cir. 2009) ("In a number of other cases, we have explained that a liberty interest may arise if the length of segregated confinement is substantial *and* the record reveals that the

2

conditions of confinement are unusually harsh." (emphasis added)); *Lekas*, 405 F.3d at 612 (finding that up to ninety days in segregation does not affect liberty); *see also Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (recognizing "duration" is a component that plays a part in determining whether a liberty interest exists).

Here, McCorker does not take issue with his original sanction resulting in disciplinary segregation—or the disciplinary process that presumably led up to it. Rather, he alleges the warden inappropriately ordered that he remain in administrative segregation for approximately four and a half months. The problem for McCorker then, is that he must show both the length in segregation *and* the conditions violated the Constitution, and his complaint does not plausibly allege either.

With regard to length, a few months is not generally long enough to trigger due process concerns. However, placement in long-term segregation approaching a year or more can implicate a liberty interest, requiring further inquiry into whether the conditions of confinement impose an atypical, significant hardship. *See Marion*, 559 F.3d at 698–99 (determination of whether 240 days in segregation imposed an atypical, significant hardship could not be made at the pleading stage); *see also Atwater v. Nickels*, No. 21-2510, 2022 WL 1468698, at *2 (7th Cir. May 10, 2022) (citing *Marion*, 559 F.3d at 694–98); *Williams*, 849 F. App'x at 157 (noting that thirty days in segregation was "a duration so brief that it foreclosed any implicated liberty interest").

Additionally, although the conditions McCorker describes are harsher than those associated with ordinary prison life, they are not unduly or atypically so. "Courts have deemed an inmate's liberty interest implicated only where the conditions are far more restrictive." *Earl v. Racine Cnty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013) (collecting cases and finding conditions

3

where plaintiff was "allowed limited possessions, dressed in a 'suicide-proof gown,' served meals on Styrofoam trays, kept in continuous light for the first 24 hours, and closely and constantly monitored by prison staff" did not trigger due process concerns). Accordingly, McCorker has not stated any plausible due process claims regarding his overstay in restrictive housing.

Even if an inmate's placement itself does not trigger any due process concerns, he may still have a claim regarding the conditions of his confinement under the Eighth Amendment.[1] "Although the Constitution does not mandate comfortable prisons, it does mandate humane ones." *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (cleaned up). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (cleaned up). The Eighth Amendment requires inmates to be provided with "humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Thomas*, 2 F.4th at 719 (quoting *Farmer*, 511 U.S. at 832). They must also be provided with "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)). "Some conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834. To satisfy this standard, "the official must have

---

[1] *See Townsend*, 522 F.3d at 772–73 ("The issue of the cell conditions in TLU is best analyzed as a claim brought under the Eighth Amendment.").

actually known of and consciously disregarded a substantial risk of harm." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022).

As described above, McCorker alleges only that there are general restrictions on commissary purchases, law library access, participation in group religious services, and access to a barber. The description McCorker provides does not plausibly demonstrate the conditions were sufficiently serious to deny him life's necessities. *See Giles v. Godinez*, 914 F.3d 1040, 1051–52 (7th Cir. 2019) (finding "harsh" conditions in segregation unit including "vermin infestations, filthiness, and lengthy periods of isolation" did not establish inmate was "deprived of the minimal civilized measure of life's necessities, even considering the effects on his mental condition"); *see also Conner v. Hoem*, 768 F. App'x 560, 563–64 (7th Cir. 2019) ("restricting inmates to weekly showers does not violate the Eighth Amendment" (citing *Jaros v. Ill. Dep't of Corrs.*, 684 F.3d 667, 671 (7th Cir. 2012)); *Smith v. Erickson*, 684 F. App'x 576, 578–79 (7th Cir. 2017) (collecting cases and recognizing the distinction between the denial of "recreation," which did not state a plausible constitutional violation, versus the denial of exercise in its entirely, which could); *Stojanovic v. Humphreys*, 309 F. App'x 48, 52 (7th Cir. 2009) (finding conditions where visitation was restricted did not deny inmates of "the minimal civilized measure of life's necessities"); *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006) ("[T]he mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights . . . ."); *Renee v. Neal*, No. 3:18-CV-592, 2018 WL 4468968, at *2 (N.D. Ind. Sept. 17, 2018) (complaint did not plausibly allege denial of access to commissary items violated the Eighth Amendment). Therefore, McCorker has not stated any plausible Eighth Amendment claims either.

If McCorker believes he can state a claim based on (<u>and consistent with</u>) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the Court after he properly completes the form.

For these reasons, the Court:

(1) GRANTS Christopher McCorker until **June 5, 2025**, to file an amended complaint; and

(2) CAUTIONS Christopher McCorker if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on May 6, 2025.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT