UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER MCCORKER,<br>Plaintiff,<br>v.<br>RON NEAL,<br>Defendant. | CAUSE NO. 3:24-CV-775-TLS-AZ |

OPINION AND ORDER

Christopher McCorker, a prisoner without a lawyer, filed an amended complaint. ECF 14. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

McCorker alleges that, on October 7, 2022, he was placed in administrative segregation pending an investigation. He was found guilty of a disciplinary offense and sanctioned with 90 days of segregation. He satisfied his sanction on January 7, 2023. He was, however, not released to general population. He remained in the same cell house on administrative restrictive housing for a total of 237 days.

McCorker alleges that the cell he was assigned to in D cell house had human feces on the cell bars and walls. He further indicates that he was denied cleaning supplies. Additionally, McCorker indicates that D cell house was infested with roaches, mice, spiders, and pigeons. He

found mice in his bed in the middle of the night. He once watched a mouse run around the rim of his toilet. Roaches were present at all times and he struggled to keep them out of his food. The spiders allegedly included brown recluse spiders, which McCorker is familiar with due to a previous bite.[1]

These conditions allegedly impacted McCorker's health. Prior to residing in D cell house, he did not have breathing difficulties. He has now been diagnosed with asthma and must use an inhaler. He also has stomach pain and headaches that he links to the conditions he experienced in D cell house.

McCorker filed grievances about the feces on his walls and cell bars. He also filed grievances about being left in segregation after he had served his 90-day sanction. He indicates that he received no responses to these grievances. He also filed appeals challenging his placement, but they were unsuccessful.

McCorker named two defendants in this action: the Indiana Department of Correction and Warden Ron Neal. He alleges that the defendants subjected him to unconstitutional conditions of confinement and that his due process rights were violated by keeping him in administrative segregation after his time in disciplinary segregation expired.

<u>Claims against the Indiana Department of Correction</u>

As an initial matter the Indiana Department of Correction is not a proper defendant in this action. Claims arising under the Constitution must be brought pursuant to 42 U.S.C. § 1983, which provides a cause of action for constitutional violations by people acting under color of state law. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). The IDOC is an arm of the state

[1] McCorker's earlier complaint did not describe any of these conditions. Documentation submitted with McCorker's earlier complaint indicated that, while in restrictive housing, he could not attend religious services, see the barber, buy goods from commissary, or go to the law library. ECF 2-1 at 12.

and, as such, cannot be sued in federal court under 42 U.S.C. § 1983. *See Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). States and state agencies are not "persons" for the purposes of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Williams v. Wisconsin*, 336 F.3d 576, 580 (7th Cir. 2003) (citations omitted). Therefore, McCorker cannot proceed on any Eighth Amendment or due process claims against the IDOC.

<u>Conditions of Confinement</u>

"Although the Constitution does not mandate comfortable prisons, it does mandate humane ones." *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (cleaned up). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). The Eighth Amendment requires inmates to be provided with "humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Thomas*, 2 F.4th at 719 (quoting *Farmer*, 511 U.S. at 832). They must also be provided with "'reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities.'" *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)). Prolonged exposure to infestations can be serious enough to amount to an Eighth Amendment violation. *See Davis v. Williams*, 216 F. Supp. 3d 900, 907–08 (N.D. Ill. 2016). "Some conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834. To satisfy this standard, "the official must have

actually known of and consciously disregarded a substantial risk of harm." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022).

"[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Supervisors can also be held liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (citation omitted).

Giving McCorker the benefit of all plausible inferences, his allegations regarding the conditions in D-cell house are sufficient to satisfy the objective component of the analysis. On the subjective prong of the analysis, McCorker asserts that he addressed his concerns about the feces on the cell bars and walls in several grievances, but he received no response to those grievances. There is, however, no indication that McCorker communicated with Warden Neal regarding either the feces in the cell or his inability to obtain cleaning supplies to remedy the situation.[2] McCorker indicates he filed a grievance with Warden Neal about being held in D-cell house after his 90-day sanction had expired. He further alleges that Warden Neal knew about the unit being infested with mice, roaches, spiders, and pigeons. He asserts that Warden Neal deliberately left him in D cell house after his sanction had expired for the purpose of inflicting further injury on him.

Here, it is not plausible to infer from the factual allegations in McCorker's complaint that Warden Neal knew about either the feces in McCorker's cell or his inability to obtain cleaning supplies. However, it can be plausibly inferred from the allegations in the complaint that Warden

[2] The documents McCorker submitted with his earlier complaint are not all legible, but they were reviewed and the legible portions of those documents do not make any mention of these conditions. ECF 2-1.

Neal was aware the unit was infested with mice, roaches, pigeons, and spiders. While further factual development may prove otherwise, giving McCorker the benefit of all plausible inferences, as the court must at this stage of the proceedings, he has plausibly alleged an Eighth Amendment claim against Warden Neal for deliberately subjecting him to an infestation of mice, roaches, pigeons, and spiders for an extended period of time, with the purpose of causing harm.

Due Process

The Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. That said, due process is only required when punishment extends the duration of confinement or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In other words, "disciplinary segregation *can* trigger due process protections depending on the duration and conditions of segregation." *Jackson v. Anastasio*, 150 F.4th 851, 858 (7th Cir. 2025) (quoting *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). Both the duration and the severity of the conditions themselves must be considered when determining whether the prisoner's placement in solitary confinement triggers due process protections—the length of time must be "substantial" and the conditions must be "unusually harsh." *Id.*

Similarly, while inmates do not generally have a liberty interest in "avoiding transfer to *discretionary* segregation—that is, segregation imposed for administrative, protective, or investigative purposes[,]" *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (emphasis added) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005)), the same analysis applies with regard to duration and the harshness of the conditions, *see, e.g.*, *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017) ("Prisoners do not have a constitutional right to remain

in the general population, . . . but both the duration *and* the conditions of the segregation must be considered in determining whether due process is implicated.") (cleaned up); *Marion*, 559 F.3d at 697–98 & nn.2–3 (collecting cases that hold segregation of two to ninety days does not trigger due process concerns and stating that, "[i]n a number of other cases, we have explained that a liberty interest may arise if the length of segregated confinement is substantial *and* the record reveals that the conditions of confinement are unusually harsh") (emphasis added); *Lekas*, 405 F.3d at 612 (finding that up to ninety days in segregation does not affect liberty); *see also Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (recognizing "duration" is a component that plays a part in determining whether a liberty interest exists).

Once an inmate shows a particular placement implicates a liberty interest, he has a right to a meaningful review, which periodically "evaluates the prisoner's current circumstances and future prospects, and, considering the reason(s) for his confinement to the program, determines whether that placement remains warranted.'" *Isby*, 856 F.3d at 527 (quoting *Toevs v. Reid,* 685 F.3d 903, 913 (10th Cir. 2012)).

Here, McCorker was housed in D cell house for a total of 237 days, although the first 90 days were the result of a disciplinary sanction. Nonetheless, at the pleading stage, the court accepts that this is long enough to trigger due process concerns. *See Marion*, 559 F.3d at 698–99 (determination of whether 240 days in segregation imposed an atypical, significant hardship could not be made at the pleading stage); *see also Atwater v. Nickels*, No. 21-2510, 2022 WL 1468698, at *2 (7th Cir. May 10, 2022) (citing *Marion*, 559 F.3d at 694–98).

Additionally, McCorker describes conditions in his amended complaint that are considerably harsher than those associated with ordinary prison life. "Courts have deemed an inmate's liberty interest implicated only where the conditions are far more restrictive." *Earl v.*

*Racine Cnty. Jail*, 718 F.3d 689, 690, 691 (7th Cir. 2013) (collecting cases and finding conditions where plaintiff was "allowed limited possessions, dressed in a 'suicide-proof gown,' served meals on Styrofoam trays, kept in continuous light for the first 24 hours, and closely and constantly monitored by prison staff" did not trigger due process concerns). At the pleading stage, McCorker has alleged conditions which, if true, implicate a liberty interest that requires due process.

To state a due process claim, McCorker must also allege that he did not receive the process that was due. He was entitled only to meaningful review to determine whether his placement remains appropriate. *See Isby*, 856 F.3d at 527. McCorker does not allege that his placement was not periodically reviewed or that those reviews were inadequate. McCorker alleges that he appealed his placement and that those appeals were unsuccessful. ECF 14 at 2. Additionally, documentation submitted with McCorker's earlier complaint show that his placement was evaluated when his term of disciplinary segregation ended in January 2023. ECF 2-1 at 2, 6. A classification appeal was also denied on March 14, 2026. ECF 2-1 at 11. When McCorker sought reclassification in May 2023, a report of classification hearing indicates his request was granted. ECF 2-1 at 9. Because McCorker has not alleged that he did not receive periodic reviews of his placement that satisfied the requirements of the Due Process Clause and because the documents McCorker submitted show he did receive periodic reviews of his placement, he cannot proceed on a due process claim against Warden Neal.

For these reasons, the court:

(1) GRANTS Christopher McCorker leave to proceed against Ron Neal in his individual capacity for compensatory and punitive damages for deliberately housing Christopher McCorker in a unit infested with mice, roaches, pigeons, and spiders following completion of his term of

disciplinary segregation on January 7, 2023, and continuing until May 2023, for the purpose of harming McCorker, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES the Indiana Department of Corrections;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Ron Neal at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 14);

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Ron Neal to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on September 23, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT